UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. C-07-9 |
| | § | (CIVIL ACTION C-09-348) |
| CHAD WALTER DEE POPE | § | |

### ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Chad Walter Dee Pope's ("Pope") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 68),[1] dated December 16, 2009 and received by the Clerk on December 18, 2009. The Court ordered the government to respond; the government filed a response in which it also moves for summary judgment, or, in the alternative, for dismissal of the motion. (D.E. 74). Pope filed his reply on March 31, 2010. (D.E. 75). Pope's claims fail on their merits. For these reasons, the Court DENIES his § 2255 motion. Additionally, the Court DENIES a Certificate of Appealability ("COA").

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II. FACTS AND PROCEEDINGS

Pope was arrested on December 15, 2006, and later charged with "knowingly and intentionally possess[ing] with intent to distribute a controlled substance," more than one thousand kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). (D.E. 7).

---

[1] Dockets entries refer to the criminal case, C-07-CR-09.

Pope is from Oklahoma. He was stopped at the Falfurrias check point in Brooks County, Texas driving a tractor trailer rig that he owned. A drug dog alerted to his trailer and at secondary inspection, the dog unearthed 1294 kilograms of marijuana under the load of fiberglass insulation. Street value of the drugs was estimated at $2 million. Pope's trailer door had an intact security seal, but there was no evidence introduced at trial as to when the seal had been placed on the door.

Pope's manifest (with the seal information) showed that the fiberglass insulation was loaded in Pharr, Texas, south of the checkpoint, and that it was to be delivered to a construction job in Houston, Texas. However, law enforcement agents determined that the recipient's address in Houston did not exist and they could not locate the receiving company at all. Moreover, the fiberglass had been purchased by Pope in Oklahoma by cashier's check, then picked up by Pope in Dallas before he traveled south to Pharr. The saleswoman in Oklahoma testified that Pope telephoned and asked how many rolls would fit in a trailer, she told him 125, but he purchased 100 and hand-delivered the cashier's check.

At the time Pope was stopped, his truck carried only four rolls of fiberglass. Pope told the agents that the insulation was loaded in Pharr, even though he picked up 100 rolls of fiberglass insulation the day before in Dallas, Texas, north of Pharr, then drove to Pharr. From Pharr, Pope was then ostensibly going to Houston to unload. Upon searching Pope's duffel bag, the agents found a second bill of lading showing a shipment of the same 100 rolls of fiberglass insulation from Houston to North Carolina.

Although Pope owned the tractor trailer rig, he purchased the truck and trailer within the two weeks before this trip with cash and a short term promissory note. Between the cash purchase price, the cashier's check for the insulation, and the tax payments needed to get

licensed, Pope spent approximately $40,000 in the two weeks before he left Oklahoma. According to other evidence, Pope did not have money saved; he had always worked for others; and was recently unemployed for several months due to illness. Pope's new found cash was not explained. One of the DEA agents testified at trial that drug dealers would furnish cash to prospective mules to buy vehicles that could be used to transport drugs. The vehicles would be titled to the drivers as part payment for services rendered, which also shielded the drug enterprise from law enforcement.

Pope was convicted after a jury trial on March 1, 2007, and subsequently sentenced to 120 months in the Bureau of Prisons, 5 years supervised release, and a special assessment of $100. (D.E. 38, 53). Pope appealed to the Fifth Circuit which affirmed his conviction by an unpublished per curiam opinion. (D.E. 65).

### III.   MOVANT'S ALLEGATIONS

In his 2255 motion and reply, Pope asserts that his counsel on appeal was ineffective for failing to raise sufficiency of the evidence of his intent. He requests an evidentiary hearing. The government has moved to dismiss, or alternatively for summary judgment on the ground that the record in the case conclusively shows that no relief is appropriate. After review of the transcript, Pope's motion, the government's response, and Pope's reply, Pope's claims fail for the reasons discussed below. No evidentiary hearing is necessary.

### IV.   DISCUSSION

A.   **28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the

statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.**     **Standard of Review of Claims of Ineffective Assistance of Counsel On Appeal**

An ineffective assistance of counsel allegation presented in a section 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A criminal defendant is entitled to effective assistance of counsel on appeal, as well as at trial. "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise

an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)). Pope has not made a showing of either deficient performance or harm.

**C.     Movant's Counsel Was Not Ineffective on Appeal for Failing to Raise Sufficiency of the Evidence of Intent or Knowledge**

The Fifth Circuit reviews de novo a claim that the evidence is legally insufficient to support the jury's findings, then, considers the evidence "in the light most favorable to the verdict," determining whether a rational jury "could have found the essential elements of the offense beyond a reasonable doubt."[2] United States. v. Watkins, 591 F.3d 780, 787 (5th Cir. 2009).

Pope stipulated at trial that his cargo included 1294 kilograms of marijuana, that the quantity was sufficient to infer intent to distribute, but he wholly denied any knowledge that marijuana was in his trailer under the load of fiberglass insulation. The only issue during trial was whether Pope knowingly and intentionally possessed the marijuana. Although knowledge of the illegal substance may usually be inferred from possession, when the contraband is concealed, as it was in this case, additional circumstantial evidence is required. United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999); United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir.1990). Unlike the situation in Diaz-Carrreon, although the marijuana was concealed under the load of insulation, it was not in a hidden compartment.

Proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence. "No single piece of circumstantial evidence need be conclusive in

---

[2] When trial counsel moves for judgment as a matter of law at the close of the State's case and again after the parties rested, review on direct appeal is de novo. United States v. DeLeon, 247 F.3d 593, 596 & n.1 (5th Cir. 2001).

isolation; the question, rather, is whether the evidence when considered as a whole, provides a substantial basis for the jury to find the defendant's possession was knowing." United States v. Miller, 146 F.3d 274, 280-81 (5th Cir. 1998). Courts routinely find circumstantial evidence of intent or knowledge to be sufficient. See United States v. Sosa-Medina, 293 Fed. Appx. 290, at *2 (5th Cir., Sept. 18, 2008) (per curiam) (not for publication) (finding evidence sufficient based upon circumstantial evidence); United States. v. Vedia, 288 Fed. Appx. 941 at *3 ( 5th Cir., Aug. 15, 2008) (not for publication) (same).

Circumstantial evidence included the following: Pope purchased 100 rolls of fiberglass insulation in Oklahoma; picked up the insulation in Dallas, Texas; drove south more than 8 hours to Pharr, Texas, where he claimed that he loaded 100 rolls of fiberglass insulation; only four rolls of insulation were found in his trailer at the checkpoint north of Pharr; two different bills of lading for 100 rolls of insulation each; the nonexistent delivery locations; the sudden, unexplained cash Pope used to purchase the rig within two weeks before the trip to Pharr; Pope's nervous reaction to being stopped at the checkpoint; and his inconsistent explanations regarding his trip. From this evidence the jury could readily have inferred that Pope knew the marijuana was in his truck. In United States v. Aguilar-Alvarez, the Fifth Circuit summarized some of the circumstantial evidence sufficient to support a conviction for knowing or intentional possession of contraband. 212 Fed. Appx. 340 , 341-42 (5th Cir., Jan. 4, 2007) (not for publication) (nervousness, inconsistent statements, implausible explanations, lying to law enforcement officers, among others); see United States v. Cruz, 129 Fed. Appx. 903 at *1 (5th Cir., May 3, 2005) (not for publication) (affirming knowing possession in tractor trailer based upon inconsistent statements of driver, nonexistent trucking facility); United States. v. Gonzalez-Lira,

936 F.2d 184, 192-93 (5th Cir. 1991) (evidence of intent sufficient, driver's statements inconsistent, bills of lading faulty).

Although appellate counsel is charged with zealous advocacy on behalf of a client, counsel is not required to advance every non-frivolous issue on appeal. See United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). Instead, to be deficient, the decision not to raise an issue must fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." Williamson, 183 F.3d at 462-63 (citations omitted). Given the standard of review and the evidence at trial, appellate counsel did not fall below professional standards in failing to challenge the sufficiency of the evidence of intent or knowledge.

**D.    Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253 (c)(1)(A). A COA, however, "may issue. . .only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)."The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Although Pope has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (it is appropriate for district court to address *sua sponte* issue of whether a COA should be granted or denied, even before one is requested); see also Rivers v. Quarterman, 661 F. Supp.2d 675, 703 (S.D. Tex. 2009).

Because Pope has not made the required substantial showing of the denial of a constitutional right, his claims do not require this Court to certify any issue for appellate consideration. This Court will not issue a COA.

## V.  CONCLUSION

For the foregoing reasons, Pope's motion to vacate, set aside or correct his sentence (D.E. 68) is DENIED. Additionally, Chad Walter Dee Pope is DENIED a Certificate of Appealability

SIGNED and ORDERED this 4th day of November, 2010.

                                                                      Janis Graham Jack
                                                                       United States District Judge